UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:18CR 92- SRU |
| v. | VIOLATIONS: |
| LEON VACCARELLI | 18 U.S.C. § 1341 (Mail Fraud)<br>18 U.S.C. § 1343 (Wire Fraud)<br>18 U.S.C. § 1957 (Money Laundering)<br>18 U.S.C. § 981(a)(1)(C) (Forfeiture)<br>28 U.S.C. § 2461(c) (Forfeiture) |

FILED
2018 MAY -2 P 3:32
U.S. DISTRICT COURT
NEW HAVEN, CT.

INDICTMENT

The Grand Jury Charges:

COUNTS ONE THROUGH THREE
(Mail Fraud)
(18 U.S.C. §§ 1341 and 2)

At all times relevant to this Indictment:

The Defendant and his Controlled Entities

1. Defendant LEON VACCARELLI was a resident of Waterbury, Connecticut and was a registered representative of the brokerage company known as The Investment Center ("TIC"), and was an investment adviser associated with IC Advisory Services, Inc. ("IC Advisory") working at a branch in Waterbury, Connecticut.

2. VACCARELLI was the owner and only member of LWLVACC, LLC, a limited liability company incorporated in the State of Connecticut with its principal place of business in Waterbury, Connecticut. VACCARELLI also engaged in and conducted business as Lux Financial Services ("Lux Financial").

3. VACCARELLI used the entity LWLVACC, LLC in connection with the business of offering purported investments and securities to clients and potential clients. VACCARELLI had sole signing authority over the bank account of LWLVACC, LLC and used that account to

1

deposit monies from investors in connection with a scheme to defraud. VACCARELLI also controlled accounts in the names of Lux Financial and Leavenworth Professional Center, LLC and used the accounts to deposit monies he received from investors in connection with a scheme to defraud.

4. VACCARELLI operated a financial advisory and brokerage service and, in that capacity, VACCARELLI offered investment advice and sold investments and securities to individuals and families in Waterbury, Connecticut, and in the surrounding communities.

5. In connection with his investment advisory business, VACCARELLI established a base of clients to which he offered financial services, including offering them purported investment opportunities, and offering to purportedly invest their funds for them for the specific purpose of yielding a positive return on their money.

### The Victim-Investors

6. As described in more detail below, VACCARELLI, based on materially false and fraudulent pretenses, representations, and promises, induced numerous victim-investors to provide him funds to be invested and convinced them to provide him authority over their money, including by falsely representing that he would obtain for them positive annual rates of return on their money by, among other ways, placing it in investment vehicles such as IRA roll-over accounts, money market accounts, certificates of deposit ("CDs"), or other types of interest-earning investments, including accounts at The Investment Center.

7. Certain victim-investors who provided VACCARELLI funds based on the materially false representations and promises are referred to in this Indictment by their initials.

### The Scheme to Defraud

8. Beginning in 2011 and continuing until the middle of 2017, in the District of

Connecticut and elsewhere, LEON VACCARELLI knowingly, willfully, and with intent to defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### The Purpose of the Scheme

9. The purpose of the scheme to defraud was for VACCARELLI to enrich himself, and his business entities, by defrauding victims out of money and property by means of materially false and fraudulent pretenses, representations, and promises, including defrauding them of their investments, such as their retirement accounts, mutual funds, securities, and annuities and thereafter using the fraudulently obtained money to pay living expenses, personal and family expenses, such as bills, restaurants, tuition, and mortgage payments, and business expenses.

### The Manner and Means of the Scheme

The manner and means by which VACCARELLI sought to accomplish and did accomplish the scheme included the following:

10. It was a part of the scheme to defraud that VACCARELLI falsely represented to victim-investors that he would invest their money in various investment opportunities and investment vehicles such as certificates of deposit, money market accounts, or interest-earning notes (collectively "securities"), when in truth and in fact, on numerous occasions, he would and did deposit customer funds into his own personal bank account and business bank accounts, commingle those funds with his own money and pay living and business expenses.

11. It was further part of the scheme to defraud that VACCARELLI would and did convince the victim-investors to liquidate portions of, or the entirety of, investment accounts that they held at various financial institutions, including pensions, 401(k) accounts and annuities.

12. It was further part of the scheme to defraud that VACCARELLI obtained money

from victim-investors, including investors in Connecticut, by falsely and fraudulently representing, among other things, that:

    A. He would invest the money on the customers' behalf, in an investment account at The Investment Center;

    B. He would invest the money on the customers' behalf, either in a certificate of deposit ("CD") or an interest-earning note;

    C. The money would be invested by him on their behalf and would earn for them a positive return,

when in truth and in fact, and as VACCARELLI well knew, the money was not invested as represented but, to the contrary, VACCARELLI deposited victims' funds into his own personal account and business bank accounts, commingled those funds with his own money and paid living, personal, family, and business expenses.

    13. It was further part of the scheme to defraud that VACCARELLI, having convinced the victim-investors to withdrawal all or portions of investment accounts, would and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate foreign commerce, including by facsimile, documents such as withdrawal requests, instructing that funds be sent by wire to certain accounts and then cause victim-investors to write checks payable to him or to his business entity or to otherwise provide him the funds.

    14. It was further part of the scheme to defraud that VACCARELLI, having convinced the victim-investors to liquidate all or portions of investment accounts, would and did cause them to have funds sent by mail or commercial interstate carrier to the victim-investors, including by check, and would and did cause the victim-investors to endorse the checks payable to the benefit of VACCARELLI or to one of his business entities, such as Lux Financial or LWLVACC, LLC.

    15. It was further part of the scheme to defraud that VACCARELLI, having convinced the victim-investors to sell or liquidate investments in their other securities accounts, would and

did cause them to give him the endorsed checks or to otherwise write checks payable directly to him or to his business entity to provide him the funds.

16. It was further part of the scheme to defraud that after prospective investors had provided him funds, based on the false promised rates of return on their money, VACCARELLI sought to create the appearance of legitimacy by, in some instances, using customer funds to pay back prior investors in a Ponzi-like fashion.

17. It was further part of the scheme to defraud that VACCARELLI caused numerous victim-investors to provide him more than $1 million based on false and fraudulent pretenses.

18. It was further part of the scheme to defraud that VACCARELLI failed to invest the money and instead used the funds for his own personal benefit, including to pay personal expenses such as his mortgage payments, credit card bills, tuition, purchases at restaurants and stores; to pay business expenses; and to make bogus "interest payments" to other victim-investors.

19. It was further part of the scheme to defraud that VACCARELLI falsely represented to the victim-investors that their money was safe and he was achieving a positive return on their funds, whereas in truth and in fact, he was not achieving the promised returns.

Execution of the Scheme (Counts One through Three Mail Fraud)

20. On or about the date set forth below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, defendant VACCARELLI did knowingly mail and caused to be mailed, and sent and delivered by private or commercial interstate carrier, mail overnight letters and other items including checks, statements and other documents, according to the addresses thereon, as set forth below, each such mailing, sending or delivery, constituting a separate count

of this indictment:

| Count | Date | Description of the delivery or use of the mails by U.S. Mail or by private or commercial interstate carrier |
|---|---|---|
| 1 | 11/23/15 | Vaccarelli caused a $70,000 check to be sent and delivered by a commercial interstate carrier by overnight delivery from The Investment Center in New Jersey to victim-investor S.R. in Connecticut. |
| 2 | 3/21/16 | Vaccarelli caused a check drawn against the account of victim-investor M.B. in the amount of $41,011.81 at LPL Financial to be sent by mail or commercial interstate carrier from LPL Financial to Lux Financial, an entity controlled by Vaccarelli, in Waterbury Connecticut. |
| 3 | 8/4/16 | Vaccarelli caused Voya Financial to send a check in the amount of $94,619.81 by mail or commercial interstate carrier from Voya Financial to victim-investor L.W. in Connecticut. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS FOUR THROUGH NINE
(Wire Fraud)
(18 U.S.C. §§ 1341 and 2)

21.  Paragraphs 1 through 19 are re-alleged.

22.  On or about the dates set forth in each count below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, defendant VACCARELLI did knowingly transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals and sounds, each wire as set forth below constituting a separate count of this Indictment:

6

| Count | Date | Description of Use of Interstate Wires and Wire Communication |
|---|---|---|
| 4 | 3/27/14 | Wire transfer of funds of $164,988.26 using interstate wires to clear funds from the account of victim-investor S.B.T. at Salisbury Bank and Trust to the account of Leon W. L. Vaccarelli at ION Bank ending in x-1757 |
| 5 | 9/12/14 | Wire transfer of funds of $21,310.42 using interstate wires to clear funds from the account of victim-investor S.B.T. at Salisbury Bank and Trust to the account of Leon W. L. Vaccarelli at ION Bank ending in x-1757 |
| 6 | 11/19/15 | Document sent via facsimile from Lux Financial in Waterbury Connecticut to Prudential Annuities Center outside Connecticut as a partial withdrawal request, requesting a $30,000 transfer of funds from the account of victim-investor S.R. |
| 7 | 11/23/15 | Wire transfer of funds of $30,000 from Prudential Annuities Center outside Connecticut to Thomaston Savings Bank in Connecticut to the account of victim-investor S.R. account ending in x4259. |
| 8 | 8/2/16 | Document sent via facsimile from Lux Financial in Waterbury Connecticut to Voya Financial outside Connecticut as a full surrender request, requesting approximately $94,619 of funds be withdrawn from the account of victim-investor L.W. |
| 9 | 10/12/16 | Document sent via facsimile from Lux Financial in Waterbury Connecticut to The Investment Center Inc. outside of Connecticut as a IRA / ESA Distributions requesting one-time partial distribution of $60,000 to be Federal Fund wired to the account of Victim-Investor D.R. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS TEN THROUGH TWELVE
(Money Laundering)
(18 U.S.C. §§ 1957 and 2)

23. Paragraphs 1 through 19 are re-alleged.

24. On or about the dates listed for each count below, in the District of Connecticut and elsewhere, VACCARELLI did knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, all involving financial institutions which are engaged in, and the activities of which affect, interstate commerce, such property having been derived from specified unlawful activity, that is, mail fraud in violation of Title 18, United

States Code, Section 1341, and wire fraud in violation of Title 18, United States Code, Section 1343 as follows:

| Count | Date | Funds Attributable To: | Monetary Transaction |
|---|---|---|---|
| 10 | 12/1/15 | Victim-Investor S.R. | Vaccarelli caused a transfer of funds by check (#3919) to Thomaston Saving Bank in the amount of $14,935.25 as a payment on a commercial loan x-6463 with funds obtained from mail fraud and/or wire fraud. |
| 11 | 12/2/15 | Victim-Investor S.R. | Vaccarelli caused a transfer of funds by check (#3907) as a payment to pay off senior notes in the amount of $75,000 with funds obtained from mail fraud and/or wire fraud. |
| 12 | 8/15/16 | Victim-Investor L.W. | Vaccarelli caused a transfer of funds by check (#4035) to an account he controlled at Thomaston Savings Bank in the name of Leavenworth Professional Center the amount of $30,000 with funds obtained from mail fraud and/or wire fraud. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## NOTICE OF FORFEITURE ALLEGATIONS
(Forfeiture Relating to Fraud Offense)

25. Upon conviction of any of the mail and wire fraud offenses alleged in Counts One through Nine, LEON C. VACCARELLI shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1341 and 1343 including but not limited to the following:

Money Judgment:

A sum of money equal to the total amount of any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1341 and/or 1343.

All right and interest in the following: (i) One Parcel of Property located at 84 Joshua Town Road, Waterbury, Connecticut and (ii) One Parcel of Property Located at Lot 15, Joshua Town Road, Waterbury, Connecticut along with all appurtenances and improvements thereon.

26. If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 981(a)(1) as incorporated by 28 U.S.C. § 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/s/
FOREPERSON

UNITED STATES OF AMERICA

JOHN H. DURHAM
UNITED STATES ATTORNEY

MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY