UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Criminal No. 3:18cr92 (JBA) |
| v. | |
| LEON VACCARELLI | March 23, 2020 |

**RULING DENYING DEFENDANT'S MOTION FOR ACQUITTAL**

Defendant Leon Vaccarelli moves for a judgment of acquittal pursuant to Federal Rules of Criminal Procedure 29 and 33. The Government opposes, and Defendant has filed no reply. For the reasons that follow, Defendant's Motion for Acquittal is denied.

**I. Background**

The Court assumes the parties' familiarity with the underlying facts and history of this case. Briefly, on May 29, 2019, Defendant Leon Vaccarelli was convicted by jury trial of all twenty-one counts of the Superseding Indictment. (Jury Verdict [Doc. # 119].) Counts One through Three charged Defendant with mail fraud in violation of 18 U.S.C. §§ 1341 and 2, Counts Four through Twelve charged Defendant with wire fraud in violation of 18 U.S.C. §§ 1341 and 2, Counts Thirteen through Eighteen charged Defendant with securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, and Counts Nineteen through Twenty-One charged Defendant with money laundering in violation of 18 U.S.C. §§ 1957 and 2.

The charges in this case recount that Defendant "induced numerous victim-investors to provide him funds to be invested . . . based on materially false and fraudulent pretenses, representations, and promises" and subsequently made personal use of those funds. (Superseding Indictment [Doc. # 61] ¶ 7.) At trial, defense counsel argued that Mr. Vaccarelli's functioning was so impaired by his alcoholism that he could not have formed the requisite criminal intent and thus was not guilty of all charges. Mr. Vaccarelli testified at trial regarding his substance abuse disorder, as did Donna Gleissner, a licensed drug and alcohol

counselor who treated Mr. Vaccarelli. Prior to trial, the Court granted the Government's motion to preclude testimony from Defendant's proposed expert witness, Dr. Howard Zonana. (Ruling Precluding Dr. Zonana [Doc. # 89].) Defendant sought to offer Dr. Zonana's testimony on, *inter alia*, Mr. Vaccarelli's "diagnosis of Substance Abuse- Alcoholism" and "the effects of chronic alcoholism on individuals generally and Mr. Vaccarelli in particular." (Dr. Zonana's Supplemental Report [Doc. # 83-1] at 2.) The Court precluded Dr. Zonana's testimony under Federal Rule of Criminal Procedure 16(b)(1)(C) for failure to provide an adequate summary of his opinions and the bases for those opinions, and under Federal Rule of Evidence 403 because the risk of jury confusion outweighed the limited probative value of Dr. Zonana's testimony. (Ruling Precluding Dr. Zonana at 5, 8.)

## II. Discussion

Federal Rule of Criminal Procedure 29(a) requires courts to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction" after the presentation of evidence. In considering a motion for acquittal, courts must "view the evidence presented in the light most favorable to the government, and . . . draw all reasonable inferences in its favor." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). Courts should "consider the evidence in its totality, not in isolation." *Id.* The Court must "be careful to avoid usurping the role of the jury" and must "not substitute [its] own determinations of credibility or relative weight of the evidence for that of the jury." *Id.* (internal quotation omitted). Rather, the Court "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984) (internal quotation omitted). If "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible," then the Court "must let the jury decide the matter." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). A defendant's motion for acquittal "shoulders a heavy burden in challenging

2

the sufficiency of evidence," and the Court "must uphold the jury's verdict if . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Autuori*, 212 F.3d at 114 (internal quotations omitted).

Defendant advances a variety of arguments in support of his Motion for Acquittal, and the Court will address each argument in turn.

**A. Intent to Harm and Scheme to Defraud (Mail and Wire Fraud)**

To prove that Defendant committed mail fraud as charged in Counts One through Three and wire fraud as charged in Counts Four through Twelve, the Government must have proved beyond a reasonable doubt that, among other elements, "there was a scheme or artifice to defraud" and that Defendant acted with "specific intent to defraud." (Jury Instructions [Doc. # 118] at 14, 22.) Defendant argues that "[h]is conduct was a product of his alcoholism and as a result his cognitive function was impacted so as to render him not guilty of the offenses charged" because that alcoholism prevented him from forming any "intent to defraud." (Mem. Supp. Mot. for Acquittal [Doc. # 133] at 1.) He argues that he lacked the requisite intent to cause "actual concrete harm to the persons who are the alleged victims in this case." (*Id.* at 2.)

First, Defendant argues that "[t]ypically, for there to be fraud," the defendant must have "intended to harm the victim." (Def.'s Mem. at 15.) Here, Defendant argues, "no evidence was produced at trial to show that Mr. Vaccarelli had the intent to harm anyone," and thus he is entitled to acquittal on the mail and wire fraud charges. (*Id.* at 16.) Specifically, Defendant argues that "there was no evidence adduced at trial or even any allegations by any witness at trial that Mr. Vaccarelli <u>intended</u> that any of the investors suffer any loss or 'actual concrete' harm, which is the *sine qua non* of mail and wire fraud, and Mr. Vaccarelli certainly did not intend for anyone to lose money or be harmed." (*Id.*)

Second, Defendant argues that the decision in *United States v. Countrywide Home Loans, Inc.*, 822 F.3d 650 (2d Cir. 2016), "eviscerates . . . the government's theory of

3

culpability" by differentiating between a "mere breach of contract and a fraud." (Def.'s Mem. at 17.) In *Countrywide*, the Second Circuit explained that the difference rests on whether the defendant had "contemporaneous fraudulent intent." 822 F.3d at 662. In other words, fraud occurs when "a contractual promise is made with no intent ever to perform it," but a mere breach of contract occurs when the promisor *later* decides not to perform on his promise. *Id.* Defendant suggests that his conviction cannot stand because the Government failed to prove beyond a reasonable doubt that he intended not to perform on his promises to invest the victims' funds at the time he made those promises.

Defendant's argument that there was no evidence at trial showing that Mr. Vaccarelli intended to defraud fails in light of volume of circumstantial evidence of intent to defraud introduced at trial. As the Court instructed the jury, "the ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based on a person's outward manifestations, his words, his conduct, his act[s] and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them." (Jury Instructions at 17.) *See United States v. Litan*, 1995 WL 723135, at *1 (2d Cir. 1995) (rejecting defendant's argument that government failed to prove intent to defraud and noting that "there is rarely direct evidence of a defendant's state of mind," and thus "the jury's verdict may be based entirely on circumstantial evidence").

Moreover, Defendant misses the mark with regard to the scope of the required "intent to defraud." Defendant's argument conflates "intent to defraud" with intent that the victims actually lose money, but those concepts are not equivalent, despite his suggestion. Rather, the Government need not have proved that Defendant intended that his victims endure financial losses in the long run in order to prove that he acted with intent to defraud. Circumstantial evidence upon which a jury may base its conclusion that the defendant acted with intent to defraud includes evidence showing that "defendant made misrepresentations to the victim(s) with knowledge that the statements were false." *Guadagna*, 183 F.3d at 129.

4

Where the "necessary result of the scheme is to injure others, fraudulent intent may be inferred from the scheme itself." *Id.* (internal quotation and alteration omitted). Moreover, fraudulent intent may be inferred from circumstantial evidence "where the defendant's misrepresentations foreseeably concealed economic risk or deprived the victim of the ability to make an informed economic decision." *United States v. Binday*, 804 F.3d 558, 578 (2d Cir. 2015). Therefore, a jury may conclude that a defendant intended to defraud even in the absence of evidence that he intended for his victims to ultimately lose money.

Thus, contrary to Defendant's suggestion, any absence of direct evidence or testimony showing that Defendant intended to defraud the victims does not indicate that the Government failed to meet its burden on this element. Rather, the Government produced ample evidence at trial which would permit a rational jury to conclude that Defendant made misrepresentations to victims with knowledge that those statements were false and that those misrepresentations foreseeably concealed economic risk from the victims. Specifically, evidence showing that Defendant's misrepresentations to investors and his blatant misuse of their purportedly invested funds were often nearly contemporaneous supports the jury's conclusion that Defendant knew his statements were false when he made them. Evidence that Defendant sent lulling letters to victims that claimed the victims' funds had been invested as discussed *after* he had already misappropriated those funds, (*see, e.g.,* Trial Ex. 16B (Lulling Letter to Ms. Chauncey))—in other words, a misrepresentation which he knew was false—further supports the jury's conclusion that Defendant acted with intent to defraud.

Moreover, even if Defendant did not intend for any investors to suffer "any loss or actual concrete harm" as he claims—in other words, even if Defendant genuinely intended to repay the victims—the jury was still entitled to infer that he intended to *defraud* those investors because their losses were a "necessary result of the scheme" in that the scheme involved spending their money to cover his personal expenses. *See Guadagna*, 183 F.3d at

5

129. Finally, because the evidence plainly demonstrated that Mr. Vaccarelli "concealed economic risk" and "deprived the victim[s] of the ability to make an informed economic decision," the jury was entitled to infer that Defendant acted with intent to defraud. *See Binday*, 804 F.3d at 578. Thus, even in the absence of direct evidence demonstrating that Defendant intended for his victims to lose money or that he never intended to repay them, the Government introduced sufficient evidence at trial to permit a rational jury to infer that Defendant acted with intent to defraud.

Separately, Defendant argues that his conviction cannot stand because the Government proved at most the existence of a "scheme to deceive," not a "scheme to defraud" as is required. (Def.'s Mem. at 20.) Defendant's argument relies heavily on *United States v. Takhalov,* an Eleventh Circuit case which discussed the Second Circuit's caselaw regarding mail and wire fraud. 827 F.3d 1307 (11th Cir. 2016). *Takhalov* describes the Second Circuit as having "drawn a fine line between schemes that do no more than cause their victims to enter into transactions that they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes." *Id.* at 1314 (quoting *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007)). The *Takhalov* Court described that position as consistent with the idea that a "scheme to defraud . . . refers only to those schemes in which a defendant lies about the nature of the bargain itself," while a mere "scheme to deceive" occurs when a defendant "lies about something else," like, for example, whether or not he is the "long-lost cousin of a prospective buyer." *Id.* at 1313-14.

Defendant argues that *Takholov* and the Second Circuit cases upon which it relies make clear that there is no scheme to defraud where the defendant "does not intend to harm the person he intends to trick," because it is only a scheme to deceive "[i]f the alleged deceit merely and solely causes the victim to enter into a contract that they would not normally enter." (Def.'s Mem. at 21.) But Defendant misreads the discussion in *Takholov*, which focuses

6

on whether the deceit was as to the "nature of the bargain itself," not on whether the defendant intended to harm his victims. Moreover, the *Takholov* decision makes clear that the conduct which the Government proved at trial—Defendant's misappropriation of client funds without their knowledge and contrary to their agreements—falls squarely within the definition of a scheme to defraud, not a scheme to deceive. *See* 827 F.3d at 1314 (a defendant in a wire fraud case is entitled to acquittal where "the alleged victims received exactly what they paid for").

Thus, Defendant has failed to demonstrate that a rational jury could not determine that he acted with intent to defraud or conducted a scheme to defraud, and he is not entitled to acquittal on those grounds.

### B. Material False Statements (Mail, Wire, and Securities Fraud)

To prove that Defendant committed mail fraud as charged in Counts One through Three and wire fraud as charged in Counts Four through Twelve, the Government must have proved beyond a reasonable doubt that, among other elements, Defendant employed "materially false and fraudulent pretenses, representations or promises." (Jury Instructions at 14, 22.) *See United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007) ("Our cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes.") Similarly, to prove that Defendant committed securities fraud as charged in Counts Thirteen through Eighteen, the Government must have proved beyond a reasonable doubt that, among other elements, Defendant "made an untrue statement of material fact or omitted to state a material fact that made what was said, under the circumstances, misleading." (Jury Instructions at 29-30.) As the Court instructed the jury, a material fact "is one that would have been significant to a reasonable investor's investment decision. . . . A statement or

omission is 'material' if there is a substantial likelihood that a reasonable investor under the circumstances in which the statement was made or omitted, would have considered the misrepresentation or omission important in making an investment decision." (*Id*. at 32.)

Defendant argues that the Government "failed to present any evidence that the misrepresentations" he made were "'material,' much less 'essential to the bargain.'" (Def.'s Mem. at 2.) As to the mail and wire fraud counts, Defendant also argues that he "did not deceive anyone, nor did he make any misrepresentation to anyone, material or otherwise." (*Id.* at 15-16.) Defendant notes that "what matters is not the investor's subjective understanding of their relationship with Mr. Vaccarelli, but how a 'reasonable investor' would have perceived the relationship." (*Id.* at 15.) Defendant also argues that for a statement to be material, "there must also be a plausible way that [the investor] could suffer financially' as a result of it." (*Id.* at 15-16 (quoting *Levine v. NL Indus., Inc.*, 926 F.2d 199, 202-03 (2d Cir. 1991)) (alteration in Def.'s Mem.).) Defendant contends that the misrepresentations at issue in this case "do not meet the materiality requirement" because they did not "affect the decision to make the investment in which the loss complained of is incurred." (Def.'s Mem. at 14.)

But Defendant cites no evidence or testimony in support of his argument, which runs contrary to the weight of the evidence introduced at trial. As the Government points out, Defendant "made material misrepresentations regarding where the clients' money was being invested—and often, the fact that it would be invested." (Gov't Opp. at 6.) The Government introduced ample evidence to demonstrate that although "clients were told their money was going to be invested in a Senior Note Program, a Certificate of Deposit ('CD') or held in a client funds account, victim-investors' money was not invested as such, but was instead used as Vaccarelli's own bank balance." (*Id.* at 7 (citing exhibits and trial transcripts showing misrepresentations).) In sum, Defendant argues that neither his victims nor an objectively reasonable investor would consider his misrepresentations—about whether he

8

would invest client funds or spend them on personal expenses or to repay other investors, and about his involvement with the Burton Trust—to be material or essential to the bargain. That argument is patently unreasonable and lacks any factual or legal support, and thus Defendant has not demonstrated that he is entitled to a judgment of acquittal on these grounds.

## C. Use of the Mails (Mail Fraud)

To prove that Defendant committed mail fraud as charged in Counts One through Three, the Government must have proved beyond a reasonable doubt that, among other elements, Defendant "used or caused the use of the mails" "in execution of" his scheme to defraud. (Jury Instructions at 14.) *See Kann v. United States*, 323 U.S. 88, 95 (1944) (defendant cannot be convicted of mail fraud unless "the mailings in question were for the purpose of executing the scheme, as the statute requires"). But such mailings "need not be an essential element of the scheme," and it "is sufficient for the mailing to be incident to an essential part of the scheme or a step in the plot." *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) (internal quotations and alterations omitted).

As charged in Count One, victim Susan Rustic received by mail a check from her account at The Investment Center ("TIC") in the amount $70,000, which she then provided to Defendant for investment into a Certificate of Deposit. (Exs. 1C, 657; Trial Tr. at 152-53, 166.) As charged in Count Two, victim Michael Brough caused a check in the amount of $41,011.81 to be mailed from his account at LPL Financial to Defendant at Lux Financial for investment. (Ex. 2; Trial Tr. at 100-04.) As charged in Count Three, victim Linda Warren received by mail a check in the amount of $94,619.81 from her account at Voya Financial, which she then endorsed to an entity controlled by Defendant and provided to Defendant for investment.

Defendant argues that "the sole use of the mails" in this case "was to send checks through the mails," but the "checks were related to the investments but not themselves

fraudulent." (Def.'s Mem. at 9-10.) Thus, Defendant argues, his use of the mails was not in execution or furtherance of the fraud as is required.

In support of this argument, Defendant analogizes to several cases where courts determined that a defendant's use of the mails had not been in furtherance of any scheme to defraud. In *Parr v. United States*, 363 U.S. 370 (1960), the Supreme Court considered whether defendants, members of the Board of Trustees of a local school district who had misappropriated and embezzled district funds, used the mails in furtherance of their scheme. The *Parr* Court determined "in light of the particular circumstances of this case," that mailings which were "legally compelled"—because "the School Board was legally required to assess and collect taxes"—were not "unlawful steps in a plot" or "part of the execution of the fraud" because "it cannot be said that mailings made or caused to be made under the imperative command of duty imposed by state law are criminal under the federal mail fraud statute, even though some of those who are so required to do the mailing for the District plan to steal, when or after received, some indefinite part of its moneys." 363 U.S. at 391. Those defendants also did not use the mails in furtherance of their scheme when they used the District's credit card to purchase items at a gas station which were later invoiced and paid for by mail because they had already "irrevocably" received the goods at issue, and it "was immaterial to them, or to any consummation of the scheme, how" payment was later made for those goods. *Id.* at 393.

Similarly, in *United States v. Maze*, 414 U.S. 395 (1974), the Supreme Court considered whether a defendant who stole a credit card had used the mails in furtherance of his scheme when the bank that issued the card later received invoices by mail for the goods he purchased, as it normally would for any purchases made on cards it issued. The *Maze* Court concluded that those mailings played no role in the defendant's execution of his credit card scheme and thus were not in furtherance of that scheme. Defendant also cites *United States v. Tavares*, 844 F.3d 46 (1st Cir. 2016), and *United States v. Phillips*, 704 F.3d 754 (9th Cir.

10

2012), which also involved uses of the mails which occurred in the ordinary course of business and were only tangentially related to the charged scheme.

Defendant argues that as in those cases, the mailings at issue here were "patently innocent mailing[s] in the ordinary course of [] business transactions" and were not "in the furtherance of the fraud." (Def.'s Mem. at 12.) The Government responds that contrary to Defendant's suggestion, "[e]ach of the mailings were in execution of the scheme in that the mails were used for the precise purpose of furthering the scheme and getting money in the form of checks to Vaccarelli." (Gov't Opp. at 44.)

Especially when drawing inferences favorable to the Government, evidence at trial plainly demonstrates that the mailings at issue were in furtherance of Defendant's scheme to defraud, and the cases he cites do not suggest otherwise. Each mailing involved a check which Defendant induced his victims to send or receive in order to purportedly invest those funds in legitimate investment vehicles. The funds sent via check by mail are precisely the funds which the victims passed along to Defendant for investment. Thus, unlike in the cases upon which Defendant relies, the success of his scheme relied in no small part on the receipt of those funds by mail. The mailings at issue here were neither compelled by law, nor after the completion of his scheme, nor inconsequential to the success of his scheme, as were the mailings in the cases he cites. These mailings were, at the very least, a "step in the plot" of Mr. Vaccarelli. *Schmuck*, 489 U.S. at 711. Defendant has not demonstrated that he is entitled to a judgment of acquittal on these grounds.

### D.  Preclusion of Dr. Zonana's Testimony (All Counts)

Defendant argues that he should be acquitted on all counts because his expert witness, Dr. Howard Zonana, should have been permitted to testify at trial regarding Defendant's alcoholism. Defendant argues that Dr. Zonana's testimony "would have been of great assistance to the jury" in applying the Court's instructions to the jury "and ought to have been allowed into evidence." (Def.'s Mem. at 8.) According to Defendant, "Dr. Zonana's

testimony would have been valuable and not confusing to the jury, particularly in light of the testimony of Donna Gleissner, a certified alcohol counselor" who treated Defendant and testified about his diagnosis and treatment. (*Id.*) Defendant also argues that Dr. Zonana's opinion sufficiently "spelled out in detail" the "scientific connection regarding the effects of alcoholism." (*Id.* at 7.)

But as the Government notes, the Court previously considered and rejected each of Defendant's arguments, and "nothing argued by Vaccarelli in his post trial memorandum changes that calculus or in any way casts doubt on the Court's prior ruling." (Govt' Opp. at 30-31; *see* Ruling Precluding Dr. Zonana.) Defendant advances no new arguments and points to no new facts or law in support of his position that Dr. Zonana should have been permitted to testify. Despite Defendant's opinion that testimony from Dr. Zonana would have aided the jury, the Court has no reason to reconsider its earlier conclusion that Dr. Zonana failed to provide an adequate summary of his opinions and the bases for those opinions and thus was properly precluded under Federal Rule of Criminal Procedure 16(b)(1)(C).

Separately, Defendant argues that "Dr. Zonana's testimony would have been . . . not confusing to the jury" and thus should not have been precluded under Federal Rule of Evidence 403. (Def.'s Mem. at 8.) The Court previously concluded that the "likelihood [of Dr. Zonana's testimony] to confuse or mislead the jury substantially outweighs its probative value." (Ruling Precluding Dr. Zonana at 7.) Specifically, the Court rejected testimony from Dr. Zonana "about Defendant's mental disease of alcoholism" because such testimony was likely to "'mislead the jury into concluding[] that the defendant was temporarily insane, that the disease caused the defendant to commit the crime or otherwise impaired [his] ability to exert volitional control, or that the disease impaired the defendant's ability to reflect on consequences of [his] conduct.'" (*Id.* (quoting *United States v. Dupre*, 339 F. Supp. 2d 534, 542 (S.D.N.Y. 2004)) (alteration in Ruling).) Additionally, the Court concluded that "Dr. Zonana's testimony, to the extent it presents Defendant's version of events, runs a significant risk of

confusing or misleading the jury by suggesting that a medical expert independently approves of or believes Defendant's version of events." (*Id.* at 7-8.) Because the probative value of such testimony was limited, the Court concluded that it was substantially outweighed by the risk of jury confusion. (*Id.* at 8.)

Defendant makes no new arguments which would lead the court to reconsider its earlier conclusions. Moreover, Ms. Gleissner's and Defendant's trial testimony further demonstrates that testimony by Dr. Zonana would have had limited probative value. Ms. Gleissner testified regarding Defendant's alcoholism, his diagnosis of Substance Abuse Disorder, and his inpatient and outpatient treatment. Defendant testified at length about his abuse of alcohol and the impact on his life from his alcoholism. Thus the topic of Dr. Zonana's proposed testimony—"the effects of chronic alcoholism on individuals generally and Mr. Vaccarelli in particular"—was largely covered at trial by the testimony from Defendant and Ms. Gleissner. Especially in light of this limited probative value, Defendant has not demonstrated that the Court erred in concluding that the probative value of Dr. Zonana's testimony was substantially outweighed by its risk of jury confusion, and he is not entitled to a judgment of acquittal on these grounds.

### E. Evidence Regarding The Investment Center Rules (All Counts)

Defendant argues that he should be acquitted on all counts because it was "unduly prejudicial under Rule 403" for the Court to permit "testimony from the Investment Center as to the defendant's violations of its rules and written conduct" because "its probative value was outweighed by the danger of unfair prejudice or misleading the jury. (Def.'s Mem. at 9.) Defendant argues that "[e]ven with the court's jury instruction to the contrary, once the jury heard that Mr. Vaccarelli had violated company rules with regard to securities laws, it likely used that to find him guilty in this case" because "[f]or a non-lawyer, the facts are too similar, e.g., both cases involve agent misconduct." (*Id.*) Defendant also claims that the Government

13

"had no reasonable purpose in offering that evidence except to unfairly sway the jury against" Defendant. (*Id.*)

The Government responds that contrary to Defendant's suggestion, its purpose in introducing evidence of Defendant's violation of TIC rules was to provide "direct evidence of the fraud and direct evidence of his mental state," and because Defendant's misrepresentations on TIC forms were "part of the charged conduct." (Gov't Opp. at 41.) The Court agrees that Defendant's knowledge and evasion of TIC rules was highly relevant to his mental state in committing the charged fraud, and that evidence of his misrepresentations to TIC, which allowed him to continue working with TIC, was properly introduced to prove Defendant's scheme to defraud his victims.

Despite Defendant's suggestion, absent any "evidence to the contrary, [courts] must presume that juries understand and abide by a district court's limiting instructions." *United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002). Here, the Court specifically instructed the jury regarding evidence of Defendant's violation of TIC rules:

> Ladies and gentlemen, during this trial you have heard evidence regarding the provisions of the company manual of The Investment Center and the defendant's contract with The Investment Center as well as testimony from a member of The Investment Center's compliance department. You also were presented with evidence offered to show certain violations of regulations of FINRA, the Financial Institution Regulatory Authority, by Mr. Vaccarelli.
>
> You may consider the evidence you heard in this regard and give it such weight as you deem appropriate to the extent that you find it sheds light on the questions before you regarding whether the defendant engaged in a scheme to defraud and with regard to the questions of willfulness and specific intent to defraud. Mr. Vaccarelli is not on trial for violating any laws other than the federal criminal laws cited in the Superseding Indictment, a copy of which you have in your notebooks. Specifically, you may not vote to convict the defendant simply because he may have violated a company policy of The Investment Center or breached a contract with The Investment Center or because he may have violated a FINRA rule because a violation of a company policy or contract or a FINRA regulation standing alone would not constitute a crime under federal law.

> You may, however, consider evidence of any knowing violations of The Investment Center company policy or contract or a FINRA rule as you would consider any other evidence in determining whether Mr. Vaccarelli devised a scheme to defraud and whether he acted with the specific intent to defraud, as I have defined those terms for you.

(Jury Instructions at 41-42.) Absent any evidence to the contrary, the Court assumes that the jury dutifully followed these instructions and did not consider evidence of Defendant's violation of TIC rules for any improper purpose. Thus Defendant has not demonstrated that he is entitled to a judgment of acquittal on these grounds.

### F. Rule 33 Motion for New Trial

Defendant's motion requests on its face only a judgment of acquittal, but his repeated reference to Federal Rule of Criminal Procedure 33 suggests that he also seeks, in the alternative, a new trial. The Court will consider that request in the interest of justice.

Federal Rule of Criminal Procedure 33 permits a court "[u]pon the defendant's motion . . . [to] vacate any judgment and grant a new trial if the interest of justice so requires." A Rule 33 motion should be granted if "letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). Considering "the entire case," including "all facts and circumstances," and making an "objective evaluation," a court should grant a Rule 33 motion only if there is "a real concern that an innocent person may have been convicted." *Id*. Although courts have "broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," the authority to grant a new trial must nonetheless be exercised only "sparingly and in the most extraordinary circumstances." *Id*. (internal quotation omitted).

The Court presumes that Defendant's arguments in support of his Rule 33 Motion mirror those which he advanced in support of his Rule 29 Motion. But even exercising the broader discretion permitted under Rule 33 and making an objective evaluation of the evidence, the Court remains unconvinced by any of Defendant's arguments. The Government's evidence at trial overwhelmingly demonstrated Defendant's guilt, and the

15

Court does not harbor any real concern that an innocent person may have been convicted. Thus, for substantially the same reasons as discussed above with regard to his request for acquittal, Defendant has not demonstrated that he should be granted a new trial under Rule 33.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Acquittal [Doc. # 122] is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of March 2020.