## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                     No. 3:18-cr-00092 (JBA)

vs.

LEON VACCARELLI                              September 28, 2020

## DEFENDANT LEON VACCARELLI'S
## MEMORANDUM IN AID OF SENTENCING[1]

### A. Introduction

Leon Vaccarelli is the father and sole provider for his seven minor children (ages 5 through 16), and their care and maintenance occupies virtually his every waking moment.[1] Their mother has constantly demonstrated that she does not have the ability to serve as a stable or reliable guardian and she has unilaterally brought about numerous interactions with police over parenting issues.[2] She is dependent on him for support of their seven children.[3] He is a necessary part of his children's lives and for that and other reasons, seeks a sentence of probation.

It was undisputed at trial that Mr. Vaccarelli is an alcoholic and still attends out-patient treatment for alcohol abuse. Although the testimony of Dr. Howard Zonana was ruled inadmissible at trial, it is very relevant at sentencing and a copy of his report, as well as that of

---

[1] See PSR ¶¶ 137 and 148.
[2] Mr. Vaccarelli intends to call his family attorney as a witness at sentencing.
[3] See PSR¶ 92.

Dr. Madeline Baranowski is attached to this memorandum[4]. Both Dr. Zonana and Dr. Baranowski diagnose him with mixed personality disorder with narcissistic and dependent traits. The tests she performed suggest that he may have a major mood disorder such as bipolar disorder. He had been diagnosed with Wernicke's encephalopathy[5].

First, as has been recognized by various courts, the amount of imprisonment needed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), is significantly reduced where mental illness was a factor in the defendant's commission of the offense. The law recognizes that a defendant who committed an offense due in part to mental illness is less culpable, and that the sentence that is sufficient but not greater than necessary to reflect just punishment should be less severe than it would be absent that circumstance.

Second, where undiagnosed and untreated mental illness contributed to the defendant's commission of an offense, the intervening diagnosis and ability to ensure treatment going forward also reduces the sentence that is sufficient but not greater than necessary "to protect the public from further crimes of the defendant." 18 U.S.C. §3553(a)(2)(C).

He is facing a Guidelines Range of 210 to 262 months[6]. Leon raised numerous objections to the PSR by letter dated August 18, some of which will be addressed in this memorandum:

---

[4] The Reports of Dr. Zonana and Dr. Baranowski will be submitted separately, under seal.
[5] Wernicke's Encephalopathy is caused by biochemical lesions of the nervous system and is related to chronic alcohol abuse.
[6] PSR¶120.

1.      He disagrees with a 2 level enhancement for sophisticated means under U.S.S.G.

§2B1.1(b)(10)(C). No part of the evidence offered by the Government is outside of the simple

claim that he lied to or misled investors. This conduct was fueled by his illness, alcoholism.

2.      The defendant denies that the loss amount was $1,622,002.33 or more than $1.5

million, and therefore a 16 level enhancement should not apply pursuant to U.S.S.G.

§2Bl.l(b)(l)(I). The loss was less than $1.5 million.

3.      Specifically, (a.) Chauncey executed a settlement agreement, agreeing that

her loss was the amount returned to her of $59,692.66. The additional loss of $7,904.13

should be deleted. (b.) Of the $57,000 for Schulz, $7,000 was a fee earned by the

defendant; (c.) The $85,343.36 for Sienkowski was an agreed upon fee earned by the

defendant; and (d.) The total of $479,816.36 includes expenses actually paid by the

defendant on Ms. Burtons behalf, such as rent, prescriptions, cell phone, groceries, utilities

etc. over 4 years plus his earned fee of $24,000 per month over 3 years for caring for her.

These expenses were set forth in bank statements made exhibits at trial.

4.      The defendant concedes that one person (Mrs. Augelli), had a substantial

financial hardship, but not five persons, and thus the 4 level enhancement under U.S.S.G.

§2Bl.l(b)(2)(B) should not apply. The other four requisite persons have not been identified.

5.  The defendant objects to a 2 level enhancement for obstruction of justice pursuant to U.S.S.G. §3Cl.l, based upon his testimony as to his alcoholism.

6.  The Defendant objects to Paragraph 115 as the Total Offense Level of 37 grossly overstates the seriousness of the offense. §2Bl.l App. Note 19(C). He has no criminal history.

7.  The Guidelines range is greater punishment than necessary to satisfy the purposes of sentencing as set forth in USC §3553(a) and are also unreasonable, warranting a downward departure from the Guidelines.

In accordance with Rule 32(o) of the Local Rules of Criminal Procedure, Leon

Vaccarelli respectfully submits this memorandum in aid of sentencing. Based on consideration of all the factors set forth in 18 U.S.C. § 3553(a), the Defendant asks the Court to impose a sentence of probation.

I.  **The Sentencing Court Must Consider All of the Factors Set Forth in 18 U.S.C. § 3553a in a Holistic Manner When Determining an Appropriate Sentence for Leon Vaccarelli.**

Since 2005, the United States Supreme Court has consistently stated that the Sentencing Guidelines are advisory only, and, therefore, that a District Court must consider all the factors set forth in 18 U.S.C. § 3553(a) in a holistic manlier. See *Kimbrough v. United States*, 128 S. Ct. 558 (2007); *Gall v. United States,* 128 S. Ct. 586 (2007); *United States v. Booker*, 125 S. Ct. 738 (2005). Certainly, the Guidelines remain "the starting point and initial benchmark" for the

sentencing Court, yet the Court "may not presume that the Guidelines range is reasonable." *Gall,* 128 S. Ct. at 596-97. To the contrary, the Court "must consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Id. That is, the Court "must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence"; *United States v. Roque*, 536 F. Supp. 2d 987, 989 (E.D.Wis. 2008) (quotation marks omitted; citing cases); and impose "individualized justice" for each defendant based on a consideration of all of the factors in § 3553(a). *United States v. Crosby*, 397 F.3d 103, 111-12 (2005).

Although each factor of § 3553(a) must be considered, a District Court must not engage a mathematical, isolated calculation of each factor. Rather, the Supreme Court "has emphasized

that §3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008). That tenet, the parsimony principle, instructs District Courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. See 18 U.S.C. § 3553(a). "In the final analysis, then, the gloss supplied by Kimbrough signifies that a district court should not evaluate a request for a variant sentence piecemeal, examining each section 3553(a) factor in isolation, but should instead consider all the relevant factors as a group and strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *Rodriguez*, 527 F.3d at 228. "This inquiry should be guided by, but not made unflinchingly subservient to, the concerns expressed in the statute's various sub-parts." Id.

Thus, when fashioning a sentence that is "sufficient, but not greater than necessary,"

§3553(a)(2) provides that the District Court should consider the applicable Guidelines Range and any pertinent policy statements; see § 3553(a)(4)-(5); as well as the following factors:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed --

    (a)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (b)    to afford adequate deterrence to criminal conduct;
    (c)    to protect the public from further crimes of the Defendant; and
    (d)    to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available; and

4. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

See 18 U.S.C. § 3553(a)(2). Under the post-Booker sentencing scheme, "even if a specific

sentencing rationale cannot be considered under the aegis of a particular sub-part of §3553(a), such a proscription does not bar consideration of that factor in the course of a more holistic review of the full panoply of section 3553(a) factors." *Rodriguez*, 527 F.3d at 229.

In this case, a holistic examination of all the § 3553(a) factors strongly favor a sentence of probation together with a lengthy period of supervised release and other conditions imposed by the Court. Such a sentence would be "sufficient, but not greater than necessary," for Leon Vaccarelli.

### IV. <u>Calculation of the Advisory Guidelines Range.</u>

In this case, the Court should consider the following when calculating Leon

Vaccarelli's Guidelines range: (A) the computation made by the Probation Office; and (B) Downward departure or variance issues. Each consideration will be addressed in turn.

### A.      The Probation Office Computation of the Guidelines Range.

The Probation Office has calculated that Leon Vaccarelli's Guideline's total offense level is 37 and his criminal history category is I. (See PSR¶ 120). He faces a guidelines imprisonment range of 210 to 262 months. He does not agree with this calculation.

### 1. The Court should depart Downward as the Total Offense Level Seriously Overstates the seriousness of the Offense

The Court should depart downward because the resulting offense level would grossly overstate the seriousness of the offense. §2131.1 App. Note 19. As the commentary to §2131.1 makes clear, however, "[t]here may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted." §2131.1 App. Note 19. Such a departure, provided for in the Guidelines commentary, is thus an encouraged basis for departure under the Guidelines. See *Koon v. United States*, 518 F.3d, 94, 96 (1996); *Crosby*, 397 F.3d at 112.

### 2.   The Defendant should not receive the enhancements suggested by Probation.

The Defendant sought not receive a 16 level enhancement for loss as the loss amount did not exceed $1.5 million, should not receive a  4 level enhancement for substantial hardship to 5 or more victims as only one victim qualifies as such, a 2 level enhancement for sophisticated means as there was nothing sophisticated about his conduct as a stockbroker, nor a 2 level increase for vulnerable victims, nor a 2 level enhancement for obstruction, which was based upon his testimony at trial that he was intoxicated during most if not all of the criminal conduct described at trial. That conduct was verified in the reports of Drs. Zonana and Baranowski.

**V.**     **The Remaining §3553 Factors Support a Non-Guidelines Sentence.**

As mentioned previously, the Court must balance all the factors set forth in

§ 3553(a) in order to gain a "holistic" view of an appropriate sentence for Leon Vaccarelli.

Thus, in addition to the advisory Guidelines ranges, the Court must consider each of the

remaining §3553(a) factors in its overarching effort to determine a sentence that is "sufficient,

but not greater than necessary," for Leon. In this memorandum, he respectfully submits that

each factor, whether considered alone or in combination with the other factors, compels a

sentence of 60 months.

**VI.**     **The Goals of Sentencing under §3553.**

**A.**     **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to
Promote Respect for the Law, and to Provide Just Punishment for the Offense**.

Leon Vaccarelli's case demonstrates the strong penalties that are associated with

possession and sales of drugs. In other words, this case demonstrates that the Government

will swiftly hold individuals accountable for the crime to which he pled guilty.

Retribution for engaging in wrongful conduct that is prohibited by law is of course

a strong interest in all cases -- a defendant should get a merited response to his deeds.

**B.**     **The Need for the Sentence Imposed to Afford Adequate Deterrence to
Criminal Conduct.**

No one could look at Leon Vaccarelli's situation and conclude that it would be

anything but undesirable to pursue the same course of conduct. A sentence of probation

should provide adequate deterrence.

**C.**     **The Need for the Sentence Imposed to Protect the Public from
Further Crimes of the Defendant.**

In determining an appropriate sentence, courts must also consider the need for the

sentence to "protect the public from further crimes of the defendant." §3553(a)(2)(C). In

Leon Vaccarelli's case, the risk of recidivism is hopefully deterred if he receives

treatment for his alcoholism.

**D.   The Need for the Sentence Imposed to Provide the Defendant with
        Needed Educational or Vocational Training, Medical Care, or
        Other Correctional Treatment in the Most Effective Manner.**

Educational or vocational training would not be useful for this defendant. He does

require mental health and substance abuse treatment.

**E.   The Goal of Rehabilitation Would Not Be Served by a Severe Sentence**

Another factor under §3553(a) is the need for rehabilitation. §3553(a) (2) (D). As the

Court stated in *United States v. Carvajal*, "[a] judge should be hesitant before sentencing so

severely that he destroys all hope and takes away all possibility of useful life. Punishment

should not be more severe that that necessary to satisfy the goals of punishment." No. 04 CR

222(AKH), 2005 WL 476125, at *6 (S.D.N.Y. Feb. 22, 2005).

**F.   Leon Vaccarelli's History and Characteristics Warrant a Sentence of
        Probation.**

1. Introduction

After evaluating the Sentencing Guidelines and calculating a potentially applicable

Guidelines range, as sentencing court must consider the remaining §3553(a) factors "impose a

sentence sufficient, but not greater than necessary, to comply with the purposes set forth by

Congress". *Kimbrough,* 128 S.Ct. at 570. Sentencing Courts now have the obligation to consider

factors that were discouraged under the pre-*Booker* mandatory Guidelines regime, such as the

history and characteristics of the defendant, the likelihood of recidivism, and the public's need

for protection, because they are relevant in determining the "history and characteristics" of the

defendant" under. §3553(a)(1). E.g. *Kimbaugh*, 128 S.CT. at 570.

    2. <u>Defendant's Mental Illness Lessens His Culpability and, as a Result, Reduces the Relevance of Punishment as a Factor in Determining His Sentence</u>

    Section §3553(a) provides that one of the main purposes of sentencing is "to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). And as the Court appropriately recognizes, mental illness that contributes to a defendant's offense necessarily reduces the defendant's culpability for that offense and the amount of punishment that is just, since "every case [is] a unique study" and "punishment should fit the offender and not merely the crime." *Pepper v. United States, 562* U.S. 476, 487-88 (2011) (internal quotation marks omitted).

    Courts have repeatedly recognized this principle, holding that "where mental illness is a contributing factor greatly or even only limitedly in a crime, such defendants are more likely less-deserving of punishment for punishment's sake than are those without such limitations." *United States v. Flowers,* 946 F. Supp. 2d 1295, 1299 (M.D. Ala. 2013) (internal quotation marks and alterations omitted). The rationale of punishment "lose[s] some of [its] relevance when applied to those with reduced mental capacity [,] ... because those with reduced ability to reason, or to control their impulses, are less deserving of punishment than those who act out of viciousness or greed." *United States v. Cantu,* 12 F.3d 1506, 1516 (9th Cir. 1993) (internal quotation marks omitted); *see also United States v. Miranda,* 505 F.3d 785, 793-94 (7th Cir. 2007) ("[A] person who would not have committed a crime but for his mental illness would be less deserving of punishment because he is not as evil, as worthy

therefore of punishment, as one who would not be law abiding even if he were not mentally impaired.") (internal quotation marks omitted). Necessarily, the result of this reduced cause for punishment is greater leniency in the sentence ultimately imposed: "The criminal justice system long has meted out lower sentences to persons who, although not technically insane, are not in full command of their actions." *United States v. McBrooin,* 991 F. Supp. 445, 450 (D.N.J. 1998) (internal quotations omitted).

Indeed, Leon's disorder must have significantly influenced him to engage in the conduct of conviction. Just as a generic matter, according to at least one researcher, "Of crimes committed by participants with bipolar- disorder, 62% were completely or mostly related directly to symptoms." Jillian K. Peterson *et al., How Often and How Consistently Do Symptoms Directly Precede Criminal Behavior Among Offenders with Mental Illness?,* 38 LAW & HUM. BEHAV. 439, 444 (2014). For these reasons, the principal driver of Leon's sentence should not be punishment of a man who was undiagnosed and untreated at the time of the conduct in question. Instead, as explained in the next section, the appropriate focus of Leon's sentence should be treatment.

### 3. Protection of the Public Can Be Accomplished Through Treatment of Defendant's Previously Untreated Mental Illness Rather than Imprisonment

The recent confirmation that Leon has long suffered from untreated personality disorder serves not only to reduce his culpability; it also offers a unique and concrete opportunity to help "protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C), through means other than incarceration. Mental health treatment and financial and business restrictions as conditions of supervision will significantly diminish any risk that Leon

reoffends.

Elevating treatment over imprisonment as a means to protect the public from further offenses by a defendant is in keeping with the principles recognized by various courts. As has been explained, "If the mental illness is treatable, ... the goal of incapacitation may not be advanced by a heavy sentence. Instead, mental health treatment would 'incapacitate' [the defendant] from committing further crimes." *Miranda,* 505 F.3d at 793; *see also United States v. Grossman,* 513 F.3d 592, 597 (6th Cir. 2008) (favorably observing that the sentencing court "accounted for § 3553(a)'s concerns that the sentence protect society and deter future criminal conduct, . not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release"); *United States v. Follette,* 990 F. Supp. 1172, 1179 (D. Neb. 1998) (imposing a non-custodial sentence for a mentally ill defendant because "[s]uch a sentence will reduce the likelihood that [the defendant] will commit another crime because it will force [the defendant] to address her illness on a continuous basis over an extended period under the close supervision of a probation officer and a board-certified psychiatrist"). Similarly, Congress has enshrined in law the principle "that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

This is particularly true considering the Bureau of Prisons' documented difficulties providing sufficient treatment for mental illness. Although it is standard for the Government to assert at sentencing—contrary to intuition and experience—that the BOP can be counted on to provide sufficient treatment for any medical condition, it simply is not so, at least when it comes to mental illness. Indeed, as explained in a 2017 report by the Department of Justice's Office of

the Inspector General: (i) "BOP data showed that, as of 2015, only 3 percent of the BOP's sentenced inmate population was being treated regularly for mental illness" even though an internal BOP study "suggested that approximately 19 percent of federal inmates had a history of mental illness"; (ii) when the "BOP adopted a new mental health policy in 2014, increasing the standards of care for inmates with mental illness[,] ... the total number of inmates who receive regular mental health treatment decreased by approximately 30 percent," likely because the BOP "did not have the necessary staffing resources to meet the policy's increased treatment standards"; and (iii) "as of October 2015, the BOP had filled only 57 percent of its authorized full-time Psychiatrist positions nationwide and ... had significant staffing issues with regard to Psychologist positions as well." OFFICE OF THE INSPECTOR GENERAL, U.S. DEPARTMENT OF JUSTICE, REVIEW OF THE FEDERAL BUREAU OF PRISONS' USE OF RESTRICTIVE HOUSING FOR INMATES WITH MENTAL ILLNESS (July 2017) (available at hhps :blog.justice.govireports/2017/e1705 .pdf).

For these reasons, the defense submits that the availability of appropriate conditions of supervision to treat Leon's previously untreated mental illness and constrain his ability to engage in misconduct significantly reduce the need for imprisonment to satisfy the statutory purpose of "protect[ing] the public from further crimes of the defendant." 18 U.S.C §3553(a)(2)(C).

**VII.   The Types of Sentences Available.**

### A.   A Term of Imprisonment

Based on his total offense level and a criminal history category of I, his guidelines range is 210 to 262 months.

**B.**     **Probation**

See PSR ¶ ¶ 125, 126, 127.

**C.**     **Split Sentences**

A Split Sentence would not be appropriate here.

**VIII.**   **Fine and Restitution**

  **A. Restitution**

Restitution should be deferred until the parties are able to submit their disputed claims

pertaining to the same (see PSR ¶ 132.)

  **B. Fine**

Leon is unable to pay a fine based upon his present financial situation (see PSR ¶118),

but would suggest that any available funds be applied toward restitution. The guidelines range

for a fine is $40,000 to $30,000,000.00. (PSR ¶130). There is a mandatory $100 special

assessment due pursuant to 18 U.S.C. §3013 on each count of conviction.

    **IX.**     **Conclusion**

Probation recommends a Guidelines Range of 210-262 months at an offense level of 37

and a CH of I.  For the foregoing reasons, the defense respectfully submits that the Court should

require                participation in mental health and substance abuse treatment as part

of a lengthy term of supervision, and that the Court sentence him to a period of probation.

The defendant would also cite his significance in raising and caring for his 7 children as

discussed earlier, as well as his extensive involvement and contributions to volunteer community

activities (see PSR ¶116).

RESPECTFULLY SUMITTED
DEFENDANT, LEON VACCARELLI

BY */s/Jonathan J. Einhorn*
  JONATHAN J. EINHORN, ESQ.
  129 WHITNEY AVENUE
  NEW HAVEN, CONNECTICUT 06510
  FED. BAR NO. ct 00163
  203-777-3777
  einhornlawoffice@gmail.com

<u>CERTIFICATION</u>


  I hereby certify that on this 28th day of September, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Courts CM/ECF System.



   */s/Jonathan J. Einhorn*
   JONATHAN J. EINHORN